IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EVERETT CASH MUTUAL INSURANCE COMPANY and DAVID L. CUPP**, : Plaintiffs : v. : : **INSURANCE CORPORATION OF HANOVER**, : Defendant | : CIVIL ACTION NO. 1:07-CV-0641 : : (Judge Conner) : : : : : : |

## MEMORANDUM

This is a declaratory judgment action, filed by plaintiffs Everett Cash Mutual Insurance Company ("ECM") and David L. Cupp ("Cupp").  Plaintiffs request a declaration from the court that defendant Insurance Corporation of Hanover ("Hanover") must defend and indemnify Cupp in a civil action pending in the Court of Common Pleas in Perry County, Pennsylvania.[1]  Plaintiffs also raise state law breach of contract and insurance bad faith claims.

Presently before the court are the parties' cross-motions for summary judgment (Docs. 11, 14).  The motions have been fully briefed and are ripe for disposition.  For the reasons that follow, the defendant's motion (Doc. 11) will be granted, and the plaintiffs' motion will be denied (Doc. 14).

---

[1] The pending civil action is: <u>Loy Richard Binger & Sue M. Binger v. David L. Cupp</u>, No. 951-2004 (Pa. Ct. Com. Pl., Perry County filed Dec. 6, 2004).

**I.   Statement of Facts**[2]

David Cupp is a longtime member of the Woodhouse Hunting Club ("the Club"), a fraternal organization headquartered in Lemoyne, Pennsylvania. (Doc. 1 ¶ 7; Doc. 15 ¶ 1.) The Club is a not-for-profit organization[3] composed of an elected membership of twenty-four individuals. (Doc. 14, Ex. E.) Each member is responsible for annual membership dues, a portion of which are used to pay for the Club's annual operating expenses, including the insurance policy described below. (Id.; Doc. 11, Ex. E at 9-10.)

The case finds its roots in 2002, when the Club obtained a Commercial General Liability insurance policy ("Policy") issued by Hanover. (Doc. 13 ¶ 3; Doc.

---

[2] Given the applicable standard of review, the court will present the facts in the light most favorable to the non-moving party with respect to each motion. See infra Part II.

[3] The parties apparently disagree with respect to the Club's status as an incorporated entity. Compare Doc. 19 at 8-9 (presenting plaintiffs' assertion that the Club "is an unincorporated fraternal organization"), with Doc. 21 at 1-2 (presenting defendant's counter-assertion that the Club is a state-registered, non-profit corporation with a corporate identity). Because this matter has proceeded to the summary judgment stage, however, the court is not limited to the four corners of the pleadings. See infra Part II; see also 10A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2721, at 361 (3d ed. 1998) (stating that the trial court "may consider any material that would be admissible or usable at trial"). Consequently, the court takes note of the Club's business entity filing history, documented by the Pennsylvania Department of State. (See Doc. 21, Ex. A.) As reflected in that public record, the Club is legally registered as a non-profit corporation. (Id.) Accordingly, the court finds that the Club's entity status is a fact not reasonably in dispute. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 n.20 (1970) (rejecting the notion that a party opposing summary judgment may successfully create a dispute of material fact simply by relying on a contrary allegation in briefing papers); see also FED. R. CIV. P. 56 advisory committee's note on 1963 amendment to subdivision (e) (same).

15 ¶ 3.) Under the terms of the Policy, the Club was the sole named insured, but coverage was also provided for the club's executive officers, directors, and stockholders. (Doc. 1, Ex. A; Doc. 13 ¶¶ 4, 11; Doc. 15, Ex. E.) Additionally, an endorsement in the Policy, entitled "Additional Insured–Club Members," extended coverage to any of the Club's members, but only with respect to their liability for the Club's activities or the activities performed on the Club's behalf.[4] (Doc. 1, Ex. B; Doc. 13 ¶ 12; Doc. 15 ¶ 4.) The Policy remained in effect from April 1, 2002, to February 1, 2003. (Doc. 13 ¶ 3; Doc. 14, Ex. E; Doc. 15 ¶ 3.)

The overarching dispute in this case centers upon the Policy's requirement that Hanover "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'" (Doc. 14, Ex. C.) Cupp claims that the Policy imposed upon Hanover the duty to defend and indemnify him in an underlying civil action, the alleged facts of which the court will briefly detail.[5]

---

[4] In its entirety, the "Additional Insured–Club Members" provision reads: "Section II–Who is an Insured is amended to include as an insured any of your members, but only with respect to their liability for your activities or activities they perform on your behalf." (Doc. 1, Ex. B.) In a previous section of the Policy, the terms "you" and "your" are defined as being limited to "the Named Insured shown in the Declarations"—in this case, the Club. (Doc. 1, Ex. C.)

[5] The facts alleged in the underlying action are set forth in Doc. 1, Ex. E. Of course, the court's recitation of the statements contained in the underlying complaint reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations. Rather, given the procedural posture of this case, the court is required to assume that the allegations in the underlying complaint are true. See infra Part III.

On November 6, 2002, Cupp was hunting turkey in Saville Township, Pennsylvania, with an acquaintance, Loy Richard Binger ("Binger"). (Doc. 1, Ex. E ¶ 3.) During the hunt, Cupp fired his gun at what he believed to be a turkey, but instead struck Binger in the arm. (Id. ¶ 5.) Two years later, Binger commenced a civil action against Cupp in Pennsylvania state court ("the Binger action"), alleging that Cupp acted negligently and was liable for both Binger's injuries and loss of consortium damages to Binger's wife. (Id. ¶¶ 10-14, 18-19.) Just over three months after receiving Binger's complaint, Cupp demanded that Hanover defend and indemnify him against the claims; Hanover refused. (Doc. 13 ¶ 20; Doc. 14, Exs. H, I; Doc. 15 ¶¶ 17-18.)

On April 5, 2007, plaintiffs commenced the instant action. (See Doc. 1.) Plaintiffs seek a declaratory judgment, pursuant to the Pennsylvania Declaratory Judgment Act, 42 PA. CONS. STAT. § 7531, interpreting the Policy to impose upon Hanover the duty to defend and indemnify Cupp in the Binger action. (Id. ¶¶ 42-44.) Additionally, plaintiffs seek damages for breach of contract and insurance bad faith. (Id. ¶¶ 45-50, 54-69.) Hanover counterclaimed on July 18, 2007, seeking a declaratory judgment, under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, holding that Hanover owed no duty to defend, indemnify, or provide coverage to Cupp for any claims arising out of the Binger action. (Doc. 5 at 21-27.) On November 15, 2007, the parties filed cross-motions for summary judgment. (Doc. 11, 14.) The motions have been fully briefed and are ripe for disposition.

## II.  Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

The court is permitted to resolve cross-motions for summary judgment concurrently.  See InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004) (resolving parties' cross-motions for summary judgment and noting the court's "formidable task" in doing so); 10A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998).  When confronted with cross-motions for summary judgment, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion.  FED. R. CIV. P. 56; see also Strategic Learning, Inc. v. Wentz, No. 1:05-CV-0467, 2006 WL 3437531, at *4 (M.D. Pa. Nov. 29, 2006).  Fortunately, the basic

facts in the instant matter, as alleged in the pleadings, are substantially undisputed and have been borne out by the exhibits of the parties. Whether the evidence is viewed in the light most favorable to the plaintiffs or defendant, the same conclusions generally inhere, permitting efficient resolution of the instant motions. See FED. R. CIV. P. 1 ("These rules . . . should be construed and administered to secure the just, speedy, and inexpensive determination of every action.").

**III.   Discussion**[6]

The parties in the instant action request a declaratory judgment interpreting the Policy.  Under the federal Declaratory Judgment Act, the court may exercise jurisdiction at its discretion, provided the parties present "an actual controversy."[7] 28 U.S.C. § 2201(a).  Furthermore, the Act allows a court to declare the rights of parties to an insurance contract, including the extent to which a policy obligates an insurer to defend or indemnify an insured.  See ACandS, Inc. v. Aetna Cas. & Sur.

---

[6] Jurisdiction over the instant action is based on diversity of citizenship, see 28 U.S.C. § 1332, which requires the court to apply Pennsylvania law to the parties' substantive claims.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79-80 (1938); see also Borse v. Pierce Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir 1992) (requiring federal courts sitting in diversity to apply the substantive law of the forum state).  Neither party disputes the application of Pennsylvania state law to this matter.

[7] The plaintiffs in this matter raise their claim under the Pennsylvania Declaratory Judgment Act, 42 PA. CONS. STAT. § 7531, rather than the federal Declaratory Judgment Act, 28 U.S.C. § 2201.  Proceeding under the Pennsylvania Declaratory Judgment Act is improper, however, because "[a]n action for declaratory judgment is procedural in nature and purpose," Munich Welding, Inc. v. Great Am. Ins., 415 F. Supp. 2d 571, 574 (W.D. Pa. 2006); see also Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 352 (3d Cir. 1986), and a federal court sitting in diversity must apply federal law with respect to procedural rules.  Nonetheless, analyzing the issue under either the Pennsylvania Declaratory Judgment Act or the federal Declaratory Judgment Act produces the same result: both acts allow a court to declare the rights of parties in the case of an actual controversy.  Compare 28 U.S.C. § 2201 (allowing the court to "declare the rights and other legal relations of any interested party"), with 42 PA. CONS. STAT. § 7532 (allowing the court to "declare [the] rights, status, and other legal relations" of parties).  Additionally, the discretionary review power afforded to federal and Pennsylvania courts under both acts is the same.  Compare Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995) (holding that the federal Act confers "on federal courts unique and substantial discretion" to declare the rights of parties), with OSRAM Sylvania Prods., Inc. v. Comsup Commodities, Inc., 845 A.2d 846, 848 (Pa. Super. Ct. 2004) (holding that "[w]hether a trial court should exercise jurisdiction over a declaratory judgment is a matter of sound judicial discretion").

7

Co., 666 F.2d 819, 822-23 (3d Cir. 1981). When a federal court interprets the scope of coverage under a Pennsylvania insurance contract, it must apply principles of substantive state law. See Westport Ins. Corp. v. Bayer, 284 F.3d 489, 496 (3d Cir. 2002). Moreover, according to Pennsylvania law, the proper interpretation of an insurance contract is a question of law, generally reserved for the court. See 401 Fourth St., Inc. v. Investors Ins. Group, 879 A.2d 166, 170-71 (Pa. 2005).

The court's purpose in this endeavor is to "ascertain the intent of the parties as manifested by the language of the written instrument." Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983). If the contract language is clear, the court is required to enforce it. 401 Fourth St., Inc., 879 A.2d at 171. However, if "a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification;" additionally, ambiguous language should be construed "against the insurer, as the insurer drafts the policy, and controls coverage." Kvaerner Metals Div. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006) (internal citations omitted). Of course, even with this principle in mind, the "policy language must not be tortured to create ambiguities where none exist." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).

When presented with a declaratory judgment action regarding insurance coverage, the court's first step is to determine the scope of the coverage. See Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 814 (3d Cir. 1994). This court has previously explained that coverage clauses are to be "interpreted broadly so as to

afford the greatest possible protection to the insured," whereas "exceptions to an insurer's general liability are interpreted narrowly against the insurer." Penn Nat'l Ins. v. HNI Corp., 482 F. Supp. 2d 568, 607 (M.D. Pa. 2007) (quoting Eichelberger v. Warner, 434 A.2d 747, 750 (Pa. Super. Ct. 1981)). Once the court determines the scope of the policy's coverage, "the court must examine the complaint in the underlying action to determine whether it triggers coverage." Sikirica, 416 F.3d at 226.

Pennsylvania law requires an insurer to defend the insured when the complaint filed by the injured party potentially falls within the policy's coverage; thus, even where only "a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover."[8] Penn Nat'l Ins., 482 F. Supp. 2d at 607; see also Sikirica, 416 F.3d at 225-26; Pac. Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985). Furthermore, given the broad nature of the duty to defend, the court must construe the factual allegations of the underlying complaint liberally and resolve all doubts as to coverage in favor of the insured. See Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999); see also Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992). Finally, the court should accept all of the

---

[8] The duty to defend an insured "is a distinct obligation, different from and broader than the duty to indemnify." Penn Nat'l Ins. v. HNI Corp., 482 F. Supp. 2d 568, 607 (M.D. Pa. 2007); see also CAT Internet Servs. v. Providence Wash. Ins. Co., 333 F.3d 138, 141 (3d Cir. 2004). Because the court finds that Hanover had no duty to defend in this matter, it is unnecessary for the court to address the duty to defend-duty to indemnify distinction.

factual allegations of the underlying complaint as true because the duty to defend is triggered even if such allegations are "groundless, false or fraudulent." Scottsdale Ins. Co. v. Westfall Twp., Pa., No. 3:04-CV-0994, 2006 WL 3000774, at *3 (M.D. Pa. Oct. 19, 2006) (quoting Britamco Underwriters v. Weiner, 636 A.2d 649, 651 (Pa. Super. Ct. 1994)).  Bearing these principles in mind, the court will first discuss the extent of Cupp's coverage under the Policy before proceeding to the scope of protection afforded Cupp's activities.

### A. The Declaratory Judgment Action

The court is asked to interpret the scope of coverage that the Policy provided Cupp.  To begin, the parties agree that the Club itself is the sole named insured under the Policy.  (See Doc. 14, Ex. E; Doc. 15 ¶ 4.)  In an explanatory section entitled "Who is an insured," the Policy elaborates on the precise contours of the named insured's coverage.  (See Doc. 1, Ex. A.)  Not only is the Club covered, but its executive officers, directors, and stockholders also receive coverage, but only with respect to their duties as officers, directors, and stockholders.  (See id.)  Cupp does not claim to have held a position as either an officer or director, but he does appear to claim coverage by virtue of his position as a stockholder; accordingly, the court will address this contention first.  The court will then discuss the extent of Cupp's coverage as a member of the Club.

### 1.    <u>Cupp's Coverage as a Stockholder</u>[9]

Plaintiffs claim that because Cupp was a stockholder in the Club, and because the Policy extended coverage to the Club's stockholders, Cupp retained coverage for personal hunting accidents under the Policy. The exact language of the relevant Policy declaration states that the Club's "stockholders are also insureds, but only with respect to their liability as stockholders." (Doc. 1, Ex. A.) Although plaintiffs seem to argue that this language provided Cupp coverage even when he acted independently and was pursuing his personal interests, the Policy terms clearly and unambiguously state otherwise.

The Policy language expressly limits stockholder coverage to situations in which the stockholder acts pursuant to his duties as stockholder. Thus, were Cupp taking action as a stockholder, such as participating in stockholder meetings or voting on by-law amendments, his conduct would likely be insured under the Policy. But there is no doubt that the objective meaning of the Policy language excludes the activity engaged in here; namely, injuries caused during a member's

---

[9] Hanover argues that the record does not support Cupp's assertion that he was a stockholder. (Doc. 12 at 9 n.1.) Consequently, Hanover contends that it is unnecessary for the court to interpret this section of the Policy. Construing the evidence in the light most favorable to the plaintiffs, the court finds that it is unclear whether Cupp was technically a "stockholder" in the Club. Cupp avers that he was a stockholder, (Doc. 1 ¶ 8), but Hanover points to inconclusive evidence in the Club by-laws to the contrary. (See Doc. 11, Ex. G (describing the rights attached to the Club's membership shares).) Such a disputed fact cannot be resolved at this juncture. Assuming *arguendo* that Cupp was a stockholder for purposes of the Policy, however, the court nonetheless finds that the Policy's language did not afford Cupp protection for his activities. Thus, this is a fact that is not material to the resolution of this dispute.

recreational hunting excursions. Plaintiffs ask the court to torture the phrase, "but only with respect to their liability as stockholders," requesting that the court find ambiguity where none exists. See Sikirica, 416 F.3d at 220 (admonishing courts from finding ambiguity in otherwise clear policy language).

Notably, our sister court in the Eastern District of Pennsylvania reached a similar conclusion interpreting congruent language in a commercial general liability policy. In Certainteed Corp. v. Federal Insurance Co., 913 F. Supp. 351 (E.D. Pa. 1995), the court confronted a contractual limitation identical to that in the instant Policy. The Certainteed policy read: "Your stockholders are also insureds, but only with respect to their liability as stockholders." Id. at 354. The court found that this language was abundantly clear, "reflect[ing] coverage for a stockholder when its status as stockholder—not its own conduct—makes it liable for conduct of the named insured."[10] Id. at 357. Here, the Binger action makes no allegations remotely implicating Cupp's status as a stockholder; Binger seeks damages resulting from Cupp's personal, independent recreational conduct and, as such,

---

[10] Other federal courts outside the Third Circuit have also interpreted similar policy language in this exact manner. See, e.g., Elan Pharm. Research Corp. v. Employers Ins. of Wausau, 144 F.3d 1372, 1382-83 (11th Cir. 1998) (citing Certainteed Corp. and limiting policy coverage to those instances in which the claim's basis lies in the insured's status as a stockholder, rather than as an independent actor); Turner & Newall, PLC v. Am. Mut. Liab. Ins. Co., Civ. A. No. 82-1339, 1985 WL 8056, at **5-6 (D.D.C. Aug. 1, 1985) (requiring insurer to defend when the suit is premised on a stockholder's "relation to the corporation – as opposed to its independent acts"). Although these opinions are not binding on this court, their logic is persuasive.

Cupp cannot seek shelter under the Policy's coverage provision for stockholder action.

### 2.  Cupp's Coverage as a Club Member

In addition to insuring the Club itself, as well as the Club's officers, directors, and stockholders, the Policy provides coverage for the Club's members in a modification endorsement.  (See Doc. 1, Ex. B.)  The modification endorsement is entitled, "Additional Insured—Club Members (Fraternal Organizations)," and reads:  "Who is Insured is amended to include as an insured any of your members, but only with respect to their liability for your activities or activities they perform on your behalf."[11]  (Id.)  No further definitions or explanations are included in subsequent clauses of the Policy, requiring the court to determine the proper interpretation of "your activities" and whether a Club member's personal, recreational hunting is covered by this provision.

Plaintiffs contend that Club activities encompass hunting engaged in by Club members.  (See Doc. 16 at 8-10.)  Plaintiffs admit that this definition does not explicitly appear in the Policy, but argue that the term "your activities" is ambiguous, requiring the court to look beyond the contract language for interpretation.  Furthermore, because the endorsement modification is ambiguous,

---

[11] Earlier in the Policy, references to "you" and "your" were limited to the named insured—in this case, the Club.  See supra Part I; see also Doc. 1, Ex. C.  Thus, for simplicity's sake, the provision in the endorsement modification may simply be read, "Who is insured is amended to include as an insured any of your members, but only with respect to their liability for *Club activities* or activities they perform on the *Club's behalf*" (emphasis added).

plaintiffs argue that the court should resolve the ambiguity in plaintiffs' favor. To aid in this endeavor, plaintiffs direct the court to "Item 4" of the "Common Policy Declarations." (Id. at 9; see Doc. 14, Ex. E.) According to provisions captioned "Business Description" and "Form of Business," the Club is described as a "Hunt Club w/ tree stands." (Doc. 14, Ex. E.) Plaintiffs argue that Item 4 provides a definition of the Club's activities—namely, hunting—for purposes of the Policy and, consequently, when a Club member engages in any manner of hunting, he or she is participating in a covered Club activity. (See Doc. 16 at 9-10.)

Again, the court rejects plaintiffs' invitation to spin the plain language of the endorsement modification. The phrase, "your activities" is straightforward and simple to comprehend, especially when read in context with the Policy. Club activities are not references to the recreational pursuits indulged in by Club members; rather, Club activities are those actions taken by the Club in its capacity as a non-profit corporate entity. See Lenox v. Scottsdale Ins. Co., No. Civ. 04-2282, 2005 WL 1076065, at *4 (D.N.J. May 5, 2005) (interpreting identical policy language to connote "activities undertaken by the corporate entity, such as when the Club enters into a service contract"). Under Pennsylvania law, non-profit corporate entities may sue and be sued; participate in judicial proceedings; acquire, own, and use real and personal property; sell, convey, mortgage, or lease any portion of its property or assets; borrow and lend money; invest funds; and enter into contracts.[12]

---

[12] This is not intended to be an exhaustive list, but simply illustrative of the range of activities available to a corporate entity.

See 15 PA. CONS. STAT. § 5502. Club activities may encompass any of these actions that the Club may perform as a non-profit corporate entity.[13] It may hardly be said that off-site recreational hunting undertaken by a member and a non-member outside the context of a club event constitutes such an activity.

As a result, the court finds that the clear intent of the endorsement modification is to cover (1) member activities for the benefit of the Club or at its request and (2) activities undertaken by the Club as a non-profit corporate entity. See Lenox, 2005 WL 1076065, at *4 (drawing a similar conclusion interpreting identical policy language). When members represent the Club in any of the myriad business or legal transactions described in § 5502, the Policy clearly offers protection. A member's personal, recreational hunting trip fails to qualify for inclusion. Because the actions for which Cupp seeks defense and indemnification fall outside the scope of the Policy's coverage, the court finds that Hanover owed Cupp no duty to defend or indemnify.

**B.   Breach of Contract Claim**

Plaintiffs contend that Hanover breached its contractual obligations under the Policy by refusing to defend or indemnify Cupp in the Binger action. In light of

---

[13] Plaintiffs argue that the Club "is an unincorporated fraternal organization" and, as such, "has no status distinct from the persons composing it." (Doc. 19 at 8, 10.) Although it is true that Pennsylvania law considers the actions of an unincorporated entity to be indistinct from the actions of the persons comprising the entity, see Selected Risks Ins. Co. v. Thompson, 552 A.2d 1382, 1385 (Pa. 1989), because the Club is a non-profit corporation registered with the Pennsylvania Department of State, see supra Part I, plaintiffs' argument is inapposite.

the court's finding that Cupp's actions fell outside the scope of the Policy's coverage, Hanover had no duty that it neglected to fulfill. Consequently, plaintiffs' breach of contract cause of action must fail and Hanover's motion for summary judgment on this claim is granted.

### C. Insurance Bad Faith Claim

Lastly, Plaintiffs raise an insurance bad faith claim under 42 PA. CONS. STAT. § 8371. Section 8371 allows a court to impose punitive damages, attorney fees, and the reasonable interest accrued on the claim when "an insurer has acted in bad faith toward the insured." Id. Pennsylvania courts have found bad faith to exist when there was no "reasonable basis for denying benefits under the policy," Greene v. United Servs. Auto. Ass'n, 936 A.2d 1178, 1188 (Pa. Super. Ct. 2007), or when the insurer engaged in a "frivolous or unfounded refusal to pay proceeds of a policy." Bombar v. West Am. Ins. Co., 932 A.2d 78, 90 (Pa. Super. Ct. 2007) (quoting Terletsky v. Prudential Prop. & Cas. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).

Given the court's interpretation of the Policy, Hanover did not act in bad faith by virtue of its refusal to defend or indemnify Cupp. Rather, Hanover's interpretation of the Policy was in accord with the contract's objective scope. As a result, plaintiffs' insurance bad faith claim fails and Hanover's motion for summary judgment on the issue is granted.

**IV.**     **Conclusion**

In accordance with the discussion above, the court declares that Hanover had no duty to defend or indemnify Cupp in the underlying Binger action; Cupp's recreational hunting simply did not fall within the scope of activity afforded coverage by the Policy.  As a result of this finding, the court will grant Hanover's motion for summary judgment with respect to plaintiffs' breach of contract and insurance bad faith claims.

An appropriate order will issue.


     S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated: September 30, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EVERETT CASH MUTUAL INSURANCE COMPANY and DAVID L. CUPP**, : Plaintiffs : v. : : **INSURANCE CORPORATION OF HANOVER**, : Defendant : | : CIVIL ACTION NO. 1:07-CV-0641 : (Judge Conner) |

## ORDER

AND NOW, this 30th day of September, 2008, in consideration of the cross-motions for summary judgment (Docs. 11, 14), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED as follows:

1. Defendant's motion for summary judgment (Doc. 11) is GRANTED.

2. Plaintiffs' motion for summary judgment (Doc. 14) is DENIED.

3. The Clerk of Court is directed to enter JUDGMENT for defendant Insurance Corporation of Hanover and against plaintiffs Everett Cash Mutual Insurance Company and David L. Cupp, with respect to all claims.

4. The Clerk of Court is directed to CLOSE this case.

                                                    S/ Christopher C. Conner
                                                    CHRISTOPHER C. CONNER
                                                    United States District Judge